IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANK R. NERENHAUSEN, *et al.*,       *

    Plaintiffs       *

    v.       *       CIVIL NO. JKB-15-1313

WASHCO MANAGEMENT CORP., *et al.*,       *

    Defendants       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiffs are residential tenants who initiated the above-captioned action against their landlord and its management company with a complaint alleging negligence (Count I), breach of an implied warranty of habitability (Count II), and loss of consortium (Count III). (Am. Compl., ECF No. 21.) Currently pending are Plaintiffs' motion for leave to file a second amended complaint (ECF No. 36) and Defendants' motion for summary judgment (ECF No. 38). Both motions are fully briefed (*see* ECF Nos. 37, 39, 46, 49) and no hearing is necessary (*see* Local Rule 105.6 (D. Md. 2016)). For the reasons stated below, Plaintiffs' motion to amend will be denied and Defendants' motion for summary judgement will be granted.

## I. STANDARD TO AMEND THE COMPLAINT

A motion for leave to amend pleadings filed beyond the deadline set forth in the Court's scheduling order will only be granted if it satisfies both the "good cause" standard of Rule 16(b)(4) and the standard of Rule 15(a)(2) for allowing amendment of the pleadings. *Century Metal Recycling Private Ltd. v. Metal Worldwide, Inc.*, No. Civ. No. JKB-12-2650, 2014 WL 6474221, at *1 (D. Md. Nov. 18, 2014); *see also Nourison Rug Corp v. Parvizian*, 535, F.3d 295, 298–99 (4th Cir. 2008) (noting tension between Rule 15 and Rule 16, but not reaching

a trial court's Rule 15(a) finding after affirming its Rule 16(b) application of the "good cause" standard); *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003) ("once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under [Rule] 15(a)").

## II. STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. *Id.*

## III. FACTUAL BACKGROUND[1]

In April of 2013, Plaintiffs moved into a furnished townhouse owned and managed by Defendants.[2] (Nerenhausen Depo. 33:9–12, ECF No. 38-5.) On September 4, 2013, Plaintiffs signed a lease with Defendants, which was in force at the time of the critical events in this case. (2013–14 Lease, ECF No. 38-4.) That lease contained an exculpatory clause purporting to disclaim Defendants' liability for "any damage, loss, or injury to persons or property occurring in, on, or about the apartment or the Premises." (*Id.* at ¶ 26.)

In compliance with the terms of the parties' agreement, Plaintiffs' townhouse was fully furnished. (Defs.' Resps. to Reqs. for Admis. 10, ECF No. 46-2.) The furnishings included a coffee table with a metal frame and a top constructed from non-tempered glass. (Nerenhausen Depo. 43:3–10, 32:19–33:8.) The table was located in the townhouse's first floor family room. (*Id.* at 38:20–39:16.)

On January 4, 2014, as Plaintiff Frank Nerenhausen sat on the edge of the coffee table to tie his shoe, the glass top shattered. (Pls.' Answers to Interrogs. 1, ECF No. 38-6.) Broken glass punctured Mr. Nerenhausen's right buttock, lacerating his pudendal artery and resulting in nerve damage. (*Id.* at 1, 6.)

## IV. ANALYSIS

Plaintiffs have failed to show good cause for the Court to grant leave to amend their complaint more than a year after the deadline for doing so, and their motion will be denied. Also, in light of Plaintiffs' valid agreement to exculpate Defendants from liability for negligence

---

[1] Because the facts recited here are relevant to a motion for summary judgment, they, and the inferences to be drawn from them, are taken in the light most favorable to Plaintiffs, who are the parties opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). The facts as presented in this section are undisputed.

[2] Mr. Nerenhausen's employer, JLG Industries, Inc., arranged this housing for him and his family as they were relocating to Maryland. (Akins Depo. 13:7–14:5, 15:9–16:2, ECF No. 38-7.)

arising from injuries of the type suffered by Mr. Nerenhausen and their waiver of their claim for breach of implied warranty of habitability, Defendants' motion will be granted. The Court will enter judgment in Defendants' favor.

### A. *Motion to File a Second Amended Complaint*

Fourteen months after the deadline set in the Court's scheduling order expired, Plaintiffs moved for leave to file a second amended complaint, which would add a new claim for relief to their previous amended complaint. (Prop. 2d Am. Compl. ¶¶ 23–31, ECF No. 36-3.) That motion will be denied.

After the deadline provided by a court's scheduling order has passed, a litigant wishing to amend its pleading must show good cause why the court should permit it to do so. Fed. R. Civ. P. 16(b); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008.) A district court assessing good cause under such circumstances focuses on the timeliness of the amendment and the reason for its tardy submission, with the diligence of the movant being the court's primary consideration. *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 632 (D. Md. 2003) ("Lack of diligence and carelessness are hallmarks of failure to meet the good cause standard.") (internal quotation marks omitted).

The Court set November 6, 2015, as the deadline for amendment of the pleadings. (Scheduling Order 2, ECF No. 10.) However, Plaintiffs did not file their motion for leave to file a second amended complaint until January 3, 2017, some fourteen months after the expiration of that deadline. (ECF No. 36.) The Proposed Second Amended Complaint differs from the preceding Amended Complaint only in the addition of a claim based on strict liability. (Prop. 2d Am. Compl. ¶¶ 23-31.) Plaintiffs suggest that they did not previously incorporate this theory because the evidence for that claim only recently came to light through "expert reports and

4

testing by their experts, and other documents in discovery." (Reply to Defs.' Opp'n to Pls.' Mot. to File 2d Am. Compl. ¶ 3, ECF No. 39.) However, they neither specify what evidence they acquired nor do they explain how it fits the legal criteria of a strict liability claim in a way that was not previously anticipated.[3] Furthermore, the Court observes an apparent contradiction between Plaintiffs' explanation and their simultaneous assertion that "the new count has not altered the operative fact pattern in any way." (*Id.* at ¶ 6.) The Court does not find Plaintiffs to have demonstrated the requisite diligence and timeliness, and it does not find them to have shown good cause for this extraordinarily late proposed amendment to the complaint. Accordingly, it will deny Plaintiffs' motion to amend.

### B. *Motion for Summary Judgment*

Moving on to consider Defendants' motion for summary judgment, the exculpatory clause contained within Plaintiffs' lease agreement is relevant to the Court's analysis:

> Except to the extent prohibited by applicable law, neither the Owner nor Manager shall be liable for any damage, loss or injury to persons or property occurring in, on or about the apartment or the Premises. You, Occupant, or their [sic] respective guests, invitees or agents agree to save and hold Owner and Manager harmless and indemnify Owner and Manager from any liability or claim to the fullest extent permitted by law.

(2013–14 Lease ¶ 26.) Because this exculpatory clause effectively absolves Defendants from liability for Plaintiffs' claim of negligence, the Court will grant Defendants' motion for summary judgment on that cause of action. Furthermore, the Court finds Plaintiffs to have waived objection to Defendants' motion concerning the claim for breach of implied warranty of habitability and will grant Defendants' motion on that count as well. Plaintiffs' final claim for loss of consortium cannot stand on its own without either of the preceding counts. Accordingly,

---

[3] It is unclear what newly discovered facts could have suddenly made a claim for strict liability seem viable when Plaintiffs had already alleged the facts necessary to make out a claim for negligence.

the Court will grant Defendants' motion for summary judgment in its entirety, and will enter judgment in their favor.

**1. Validity of the Exculpatory Clause under Maryland Law**

In construing a contract, a court will generally "give legal effect to all of its unambiguous provisions." *Seigneur v. Nat'l Fitness Inst., Inc.*, 752 A.2d 631, 635 (Md. Ct. Spec. App. 2000). Under Maryland law, in the absence of legislation to the contrary, a public policy in favor of freedom to contract generally supports the validity of exculpatory clauses. *Wolf v. Ford*, 644 A.2d 522, 525 (Md. 1994).[4] Pertinent to the facts of the case before the Court, Maryland has a long-standing statute that nullifies exculpatory clauses seeking to indemnify a landlord from liability for occurrences "on or about the leased premises or any elevators, stairways, hallways, or other appurtenances used in connection with them," but does not void such clauses when they are restricted to liability for injuries taking place in areas that are "within the exclusive control of the tenant." Md. Code Ann., Real Prop. § 8-105 (LexisNexis 2015). Whether a landlord has retained control over the premises is a question of the parties' intention and is to be determined in light of all the significant circumstances, particularly the lease and the practices of the parties. *Shell Oil Co. v. Ryckman*, 403 A.2d 379, 382 (Md. Ct. Spec. App. 1979).

In *Shell Oil Co. v. Ryckman*, the Court of Special Appeals of Maryland considered the meaning of "exclusive control of the tenant" under this statute in the case of an infant son of the lessee of an auto service station who sued the lessor when the child was injured by glass falling from a garage door on the property. *Id.* at 380. The lease in that case preserved the lessor's right to enter the premises for the purposes of inspection or repairs and denied the lessee the ability to

---

[4] Three exceptions that render an unambiguous and otherwise statutorily enforceable exculpatory clause void are (1) when the party protected by the clause intentionally causes harm or engages in acts of reckless, wanton, or gross negligence; (2) when the bargaining power of one party to the contract is so grossly unequal so as to put that party at the mercy of the other's negligence; and (3) when the transaction involves the public interest. *Seigneur*, 752 A.2d at 638.

make attachments, additions, or alterations. *Id.* at 382. However, it also offered the tenant "the entire control and direction" of the business. *Id.* The court found the lease to give the lessee exclusive control of the premises in question. *Id.* Therefore, the lease's exculpatory clause absolved the lessor's liability for the child's injury without running afoul of the statutory prohibition currently found in Maryland's Real Property Article § 8-105. *Id.*

Mr. Nerenhausen's injury took place within the dwelling he rented from Defendants. The lease gave Plaintiffs the right to occupy the townhouse as a private residence, but preserved Defendants' right of entry for a "reasonable business purpose." (2013–14 Lease ¶¶ 3, 12.) The case is thus analogous to *Ryckman* in the division of control of the premises between landlord and tenant. Consistent with the *Ryckman* court's finding, this Court finds that both the table and the room in which it was located were in Plaintiffs' exclusive control at the time of Mr. Nerenhausen's injury. Accordingly, Maryland's limitation on indemnification provisions in leases does not void the exculpatory clause as applied to the operative facts of Plaintiffs' cause of action.

Plaintiffs do not dispute the fact that they had exclusive control over the townhouse, but instead argue that their lack of control over the selection and purchase of the table should render the exculpatory clause invalid as applied to their causes of action. (Pls.' Opp'n to Defs.' Mot. for Summ. J. 11, ECF No 46.) However, Plaintiffs fail to cite authority supporting their interpretation of Maryland's Real Property Article § 8-105, and the facts and analysis in *Ryckman* support a contrary position. In reviewing the exculpatory clause in that case, the court did not inquire whether the tenant controlled the purchase or installation of the door or the glass that caused his son's injury. 403 A.2d at 382. Rather, it asked only whether, at the time of the injury, the tenant controlled the premises on which the door was located. *Id.* Similarly, in the

instant case, Plaintiffs' exclusive control of the space in which the table was located means the exculpatory clause can apply to Mr. Nerenhausen's injury without being invalidated by statute.

### 2. Effect of the Exculpatory Clause on Plaintiff's Negligence Claim

Having determined that the exculpatory clause is facially valid, the Court next considers its effect on Plaintiffs' negligence claim. In Maryland, "contracts will not be construed to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms." *Adloo v. H.T. Brown Real Estate, Inc.*, 686 A.2d 298, 302 (Md. 1996). An enforceable exculpatory clause need not use the word "negligence" or any particular "magic words," but must "clearly and specifically indicate[] the intent to release the defendant from liability for personal injury caused by the defendant's negligence." *Id.* at 304.

*Cornell v. Council of Unit Owners Hawaiian Village Condominiums, Inc.*, provides a useful illustration of exculpatory language that, without using the word "negligence," clearly indicates intent to release a party from liability resulting from its negligence. 983 F. Supp. 640 (D. Md. 1997). There, the owner of a condominium, who injured himself after falling on ice, sued the condominium owners' council for its negligent maintenance of the parking lot in which he fell. *Id.* at 642. The exculpatory clause in the council's bylaws waived the council's liability for injury "caused by the elements, or by the Unit Owner of any unit, or any other person." *Id.* at 643. While the clause did not use the word "negligence," the Court found it absolved the council from liability by employing broad language covering personal injuries caused by any other person. *Id.* at 644. By way of contrast, *Adloo* provides an example of a contractual clause that does not unequivocally exculpate a party from its own negligence. 686 A.2d at 300. There, prospective home-sellers and their listing realtor entered into an agreement excusing the realtor from responsibility for "vandalism, theft or damage to the property." *Id.* The sellers' home was

8

later burglarized when the realtor provided a lock box code to a party falsely representing himself to be another real estate agent. *Id.* The court ruled in favor of the sellers after determining that the contractual clause was unclear on whether it exculpated the realtor from damage resulting from its own negligence or merely from situations in which the sellers' property was vandalized, stolen, or damaged without negligence on the realtor's part. *Id.* at 305.

The exculpatory clause in Plaintiff's lease agreement does not use the word "negligence." (*See* 2013–14 Lease ¶ 26.) Nonetheless, Plaintiff agreed to absolve Defendants from liability for any injury "occurring in, on or about the apartment or the Premises," and to indemnify them from "*any* liability or claim to the *fullest extent permitted by law*." (*Id.* (emphasis added).) Unlike the agreement in *Adloo*, there is no conceivable interpretation of the agreement's plain language by which one could take it to refer only to injuries arising from that defendant's non-negligent behavior. Rather, the broadly-worded exculpatory clause in the instant case is more in line with *Cornell*, and the only reasonable interpretation of this clause is that the parties intended to exculpate Defendants from all claims to the extent permitted by applicable law, which would include exculpation from claims of negligence. Accordingly, the Court finds the exculpatory clause effectively and unequivocally disclaims Defendants' liability for their potentially negligent action with respect to the glass table that was instrumental in Mr. Nerenhausen's injury. Summary judgment will therefore be granted in Defendants' favor as to Count I of the Amended Complaint.

### 3. Implied Warranty of Habitability

Negligence is but the first claim brought by Plaintiffs. Count II of the Amended Complaint alleges a breach of the implied warranty of habitability. Plaintiffs do not provide support for the complaint's assertion that "[t]here exists in all residential leases an implied

warranty, such as the apartment here, is fit for and safe for human habitation [sic]."[5] (*See* Am. Compl. ¶ 14.) In fact, while Defendants' motion for summary judgment specifically contests the legal basis of this count (Mem. in Supp. of Defs.' Mot. for Summ. J. 13–15, ECF No. 38-1), Plaintiffs offer no counterargument in their memorandum in opposition (*see* Pls' Opp'n to Defs.' Mot. for Summ. J.). The Court interprets Plaintiffs' silence on this issue as waiver, and will grant Defendants' motion for summary judgment as to Count II.

### 4. Loss of Consortium

The Amended Complaint's third and final count alleges a loss of consortium. Maryland recognizes a claim for loss of consortium in circumstances where a personal injury to one's self or one's spouse results in a "loss of society, affection, assistance, and conjugal fellowship" in the marital unit. *Oaks v. Connors*, 660 A.2d 423, 430 (Md. 1995). However, a claim for loss of consortium is derivative of the injured spouse's personal injury claim. *Id.*; *see also Deems v. W. Md. Ry. Co.*, 231 A.2d 514, 525 (Md. 1967) (holding that a claim for loss of consortium arising from physical injury must be asserted simultaneously with an underlying tort action). Because Plaintiffs' other theories of liability will not survive Defendants' motion, the derivative claim for loss of consortium must fail as well. Accordingly, the Court will grant Defendants' motion for summary judgment on all counts.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' motion for leave to amend, will grant Defendants' motion for summary judgment in its entirety, and will enter judgment for Defendants.

---

[5] In Maryland, the basis for alleging breach of an implied warranty of habitability in the context of residential leases is generally found in municipal housing codes. *See Benik v. Hatcher*, 750 A.2d 10, 23 (Md. 2000) (citing Code of Public Local Laws of Balt. City §§ 9-14.1, 9-14.2 (2016) in conjunction with the Maryland Consumer Protection Act, Md. Code Ann. Com. Law. § 13-303 (LexisNexis 2013)). However, Plaintiffs cite no applicable code under which they bring their present claim.

A separate order shall issue.

DATED this 18th day of April, 2017.

BY THE COURT:

/s/
James K. Bredar
United States District Judge